## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CHRISTINE M. EASTMAN,                    )
                                         )
                    Plaintiff,           )
                                         )        CIVIL ACTION
v.                                       )
                                         )        No. 13-2527-JWL
CAROLYN W. COLVIN,                       )
Acting Commissioner of Social Security,  )
                                         )
                    Defendant.           )
_____  )

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security

(hereinafter Commissioner) denying Social Security Disability (SSD) benefits and

Supplemental Security Income (SSI) benefits under sections 216(i), 223, 1602, and

1614(a)(3)(A) of the Social Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and

1382c(a)(3)(A) (hereinafter the Act).  Finding no error, the court ORDERS that judgment

shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the

Commissioner's decision.

## I.      Background

Plaintiff applied for SSD and SSI, alleging disability beginning June 28, 2010.  (R.

18, 176-88).  Plaintiff exhausted proceedings before the Commissioner, and now seeks

judicial review of the decision denying benefits.  She alleges the Administrative Law

Judge (ALJ) erroneously evaluated the medical source opinions and provided a narrative discussion which failed to adequately link the functional limitations in the medical source opinions with the residual functional capacity (RFC) limitations assessed.  She also argues that the ALJ's RFC assessment is not supported by substantial evidence; is not based upon a proper consideration of the third-party opinion of Plaintiff's mother or of the credibility of Plaintiff's allegations of symptoms; and failed to account for all of the limitations assessed by the ALJ.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Nonetheless, the

determination whether substantial evidence supports the Commissioner's decision is not

simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by

other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v.

Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a

claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136,

1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).

"If a determination can be made at any of the steps that a claimant is or is not disabled,

evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting

Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether

claimant has engaged in substantial gainful activity since the alleged onset, whether she

has a severe impairment(s), and whether the severity of her impairment(s) meets or equals

the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt.

P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner

assesses claimant's RFC.  20 C.F.R. § 404.1520(e).  This assessment is used at both step

four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process--

determining at step four whether, in light of the RFC assessed, claimant can perform her

past relevant work; and at step five whether, when also considering the vocational factors

of age, education, and work experience, claimant is able to perform other work in the

economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one

through four the burden is on Plaintiff to prove a disability that prevents performance of

past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord,

Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.

At step five, the burden shifts to the Commissioner to show that there are jobs in the

economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084,

1088 (10th Cir. 1999).

Although Plaintiff's Brief begins with an allegation of error in evaluating the

medical source opinions, the court will begin by considering the alleged error in

evaluating the credibility of Plaintiff's allegations of symptoms resulting from her

impairments.  This is necessary because the ALJ relied upon his credibility determination,

in part, in discounting the opinions of Plaintiff's treating counselors--Mr. Schoenthaler[1]

and Mr. McCullough.

## II.    Credibility

The court's review of an ALJ's credibility determination is deferential.  Credibility

determinations are generally treated as binding on review.  Talley v. Sullivan, 908 F.2d

585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983).

---

[1]Plaintiff's Brief refers to this counselor as "Mr. Schoelethaler," and the Mental
RFC Assessment form completed by Mr. Schoenthaler has his signature block printed as
"Chad Schoelethaler."  (R. 441).  However, Mr. Schoenthaler signed his name as "Chad
Schoenthaler," and his treatment records show his name to be "Schoenthaler."  E.g., (R.
330, 332, 412, 418, 441).  The ALJ addressed this individual as "Mr. Schoenthaler."  (R.
30).  The court agrees, and will use that name in this opinion.

"Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence.  Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173.

Therefore, in reviewing the ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility.  Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994); but see Thompson v. Sullivan, 987 F.2d 1482, 1490 (10th Cir. 1993) ("deference is not an absolute rule").  "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'"  Wilson, 602 F.3d at 1144 (quoting Huston, 838 F.2d at 1133); Hackett, 395 F.3d at 1173 (same).

Plaintiff claims the ALJ improperly disregarded her "statements regarding the intensity [and] persistence of pain and physical and mental limitations."  (Pl. Br. 39).  In her Brief, Plaintiff summarized her testimony at the hearing, id. at 39-40, and argued that the "ALJ failed to discuss most of these statements from [Plaintiff]'s testimony and only relied on her Function Report she completed in December 2010."  Id. at 40.  The Commissioner argues that the ALJ properly evaluated the credibility of Plaintiff's allegations of disabling symptoms.  She points out the ALJ's rationale for discounting the credibility of Plaintiff's allegations, and explains how, in her view the record evidence supports those findings.  (Comm'r Br. 8-12).

As the Commissioner suggests, in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987), the Tenth Circuit set out the framework for the proper analysis of a claimant's allegations

of symptoms.  In Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993), a case

dealing specifically with pain, that court explained:

> A claimant's subjective allegation of pain is not sufficient in itself to
> establish disability.  Before the ALJ need even consider any subjective
> evidence of pain, the claimant must first prove by objective medical
> evidence the existence of a pain-producing impairment that could
> reasonably be expected to produce the alleged disabling pain.  This court
> has stated:  The framework for the proper analysis of Claimant's evidence
> of pain is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987).  We
> must consider (1) whether Claimant established a pain-producing
> impairment by objective medical evidence; (2) if so, whether there is a
> "loose nexus" between the proven impairment and the Claimant's
> subjective allegations of pain; and (3) if so, whether, considering all the
> evidence, both objective and subjective, Claimant's pain is in fact disabling.

Thompson, 987 F.2d at 1488(citations and quotation omitted).

The ALJ's credibility analysis spans more than five pages of his decision.  (R. 24-

29).  It begins with an explanation of the legal standard applied.  (R. 24).  Plaintiff does

not argue that the ALJ did not apply the correct legal standard.  In his analysis, the ALJ

determined that Plaintiff's allegations are not credible and explained his bases for doing

so.  He found that with regard to mental impairments the record documents only sporadic

disruptions in mood and affect; that treatment for Plaintiff's mental impairments--

psychotropic medications and supportive therapy--is inconsistent with her allegations of

profound psychological symptoms (R. 25); that in seeking treatment for fibromyalgia

Plaintiff "presented with abnormalities in her range of motion, stability, strength and tone,

gait, and station on a very inconsistent basis;" that Plaintiff has deliberately exaggerated

the severity of her fibromyalgia pain (R. 26); that Plaintiff has not exhausted her options

for treatment of alleged constant, intractable pain and was not recommended for more significant treatment; that Plaintiff's allegations of fatigue are inconsistent with the record which shows that she has not presented "upon examination with any notable fatigue or other medical signs consistent with daytime hypersomnolence;" that despite Plaintiff's allegations of constant and numerous side effects from medication, the medical records document only some constipation in September 2010 (R. 27); that despite Plaintiff's allegations of limited, conservative treatment due to financial limitations, she had medical insurance for at least part of the relevant period, she has at least some disposable income to finance medical care, and she "sought and received routine treatment throughout the relevant period with such frequency as to belie her purported inability to seek more significant treatment measures (R. 27-28); the ALJ discounted Plaintiff's allegation that she was given medical advice to use a cane, because the medical treatment notes do not record such advice and Plaintiff did not use a cane when she reported for various physician appointments at the request of the agency; Plaintiff made inconsistent statements regarding accommodations received when taking college classes online; Plaintiff was able to work before her alleged onset date despite having the impairments of which she now complains (R. 28); and, "[f]inally, the claimant reported being able to engage in a variety of daily activities that demonstrate an ability to perform at least a range of sedentary work within the limitations identified at Finding Five."  (R. 29).

Plaintiff's argument that the ALJ failed to discuss most of her testimony is belied by the ALJ's summary of those allegations.  That summary is rather extensive:

The claimant alleged an inability to work due to a combination of mental and physical impairments, including depression, anxiety, PTSD, and Fibromyalgia. The claimant indicated that all of the aforementioned medical conditions predate her alleged onset date of disability, but that she sustained a workplace injury wherein she fell from a ladder on that date, which purportedly exacerbated all of her conditions to a disabling level of severity. (Exhibit 3E/9; Claimant's Testimony). Regarding her various mental impairments, the claimant reported that she experiences persistent symptoms of dysphoria and anxiety. "I constantly break down into tears and have anxiety attacks." (Exhibit 6E/1; Claimant's Testimony). The claimant testified that the anxiety attacks happen once per day, are associated with feelings of intense fear and chest tightness, and last for up to 45 minutes at a time. (Claimant's Testimony). She also reported that her PTSD results in flashbacks. She alleged that her Fibromyalgia causes "[e]xtreme pain and fatigue [that] make it physically impossible for [her] to function." (Exhibit 6E/1). She testified that she hurts from "head to toe," but that her pain is most significant in her right hip and right leg. (Claimant's Testimony). The claimant alleged that her combined medical conditions limit her abilities to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, remember things, complete tasks, concentrate, use her arms, and get along with others. She specifically alleged that she cannot lift any weight at all; cannot squat; and can stand, walk, and sit for only a "little" while at a time. The claimant further elaborated by indicating she can walk for only ten minutes at a time. (Exhibit 6E/6). As to her mental limitations, she reported that she can pay attention for between one and two hours at a time, but would be off-task 50 percent of a workday. She also reported that she can follow instructions well, but does not handle stress or changes in routine well. (Exhibit 6E/6-7; Claimant's Testimony). The claimant also reported that her combined impairments necessitate she take naps during the day, which last up to four hours each. (Claimant's Testimony).

(R. 24-25).

An ALJ is not required to discuss every piece of evidence. Such a requirement would be prohibitively cumbersome both in terms of time and length of decision. Rather, in addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative

evidence he rejects.  Clifton v. Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996).  The

ALJ's discussion above is a fair summary of Plaintiff's allegations, and Plaintiff does not

argue otherwise.  To the extent Plaintiff may be arguing that certain specific testimony

was not discussed, she makes no showing that the testimony was uncontroverted or that it

was significantly probative.  In fact, the ALJ's credibility finding constitutes a finding

that Plaintiff's testimony is both controverted and not significantly probative.  Plaintiff's

argument that the ALJ relied only upon the function report she completed in December

2010[2] is clearly without basis in fact when one considers the ALJ's multiple bases for

finding her allegations not credible as summarized supra at 6-7.  See also (R. 25-29).

Plaintiff has shown no error in the ALJ's credibility determination.

III.    **Evaluation of the Medical Source Opinions**

Plaintiff claims the ALJ accorded insufficient weight to the opinion of Dr. King,

Plaintiff's treating physician, and should have accorded that opinion controlling weight.

She also claims the ALJ accorded insufficient weight to the opinions of her counselors,

Mr. Schoenthaler and Mr. McCullough, and relied erroneously on the opinions of the

---

[2]The court notes that the record contains no function report completed by Plaintiff
in December, 2010, but that Exhibit 6E is a "Function Report - Adult" signed by Plaintiff
on November 12, 2010 (R. 254 (11/12/2010)).  Therefore, the court assumes that is the
function report to which Plaintiff refers in her Brief.  Although as quoted above, the ALJ
cited to this report four times in summarizing Plaintiff's allegations, that is not the
evidence he relied upon most--even in summarizing Plaintiff's allegations.  He cited
Exhibit 3E once and Plaintiff's hearing testimony six times.

state agency medical consultants--Dr. Schulman, Dr. Fortune, and Dr. Mintz.  The

Commissioner argues that the ALJ properly evaluated the medical source opinions.

### A.        Standard for Evaluating Medical Source Opinions

"Medical opinions are statements from physicians and psychologists or other

acceptable medical sources[3] that reflect judgments about the nature and severity of [a

claimant's] impairment(s) including [claimant's] symptoms, diagnosis and prognosis."

20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  Such opinions may not be ignored and,

unless a treating source opinion is given controlling weight, all medical opinions will be

evaluated by the Commissioner in accordance with factors contained in the regulations.

Id. §§ 404.1527(c), 416.927(c) (effective February 23, 2012); Social Security Ruling

(SSR) 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2014).  A

physician or psychologist who has treated a patient frequently over an extended period of

time (a treating source) is expected to have greater insight into the patient's medical

condition, and his opinion is generally entitled to "particular weight."  Doyal v. Barnhart,

331 F.3d 758, 762 (10th Cir. 2003).  But, "the opinion of an examining physician [(a

---

[3]The regulations define three types of "acceptable medical sources:"

"Treating source:"  an "acceptable medical source" who has provided the claimant
with medical treatment or evaluation in an ongoing treatment relationship.  20 C.F.R.
§§ 404.1502, 416.902.
"Nontreating source:"  an "acceptable medical source" who has examined the
claimant, but never had a treatment relationship.  Id.
"Nonexamining source:"  an "acceptable medical source" who has not examined
the claimant, but provides a medical opinion.  Id.

nontreating source)] who only saw the claimant once is not entitled to the sort of deferential treatment accorded to a treating physician's opinion." Id. at 763 (citing Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995)).  However, opinions of nontreating sources are generally given more weight than the opinions of nonexamining sources who have merely reviewed the medical record. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).

"If [the Social Security Administration] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) [(1)] is well-supported by medically acceptable clinical and laboratory diagnostic techniques and [(2)] is not inconsistent with the other substantial evidence in [claimant's] case record, [the agency] will give it controlling weight." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); see also, SSR 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15 (Supp. 2014) ("Giving Controlling Weight to Treating Source Medical Opinions").

The Tenth Circuit has explained the nature of the inquiry regarding a treating source's medical opinion. Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (citing SSR 96-2p).  The ALJ first determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" Id. at 1300 (quoting SSR 96-2p).  If the opinion is well-supported, the ALJ must confirm that the opinion is

also consistent with other substantial evidence in the record.  Id.  "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight."  Id.

If the treating source opinion is not given controlling weight, the inquiry does not end.  Id.  A treating source opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927."  Id.  Those factors are:  (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  Id. at 1301; 20 C.F.R. §§ 404.1527(c)(2-6), 416.927(c)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001).

After considering the regulatory factors, the ALJ must give reasons in the decision for the weight he gives the opinion.  Id. 350 F.3d at 1301.  "Finally, if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so."  Id. (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987)).

### B.    The ALJ's Evaluation

The ALJ began his evaluation of the opinion evidence by noting that he had "considered and given little weight to the various Global Assessment of Functioning

("GAF") scores that have been assigned to the claimant during the relevant period by her treating sources, which have ranged from 48 to 59."  (R. 29) (citing Exs. 4F/1, 4; 7F/10, 12; 22F/4, 11).  He explained that he discounted the GAF scores because they "may have little or no bearing on an individual's social and occupational functioning," because they are of a "transient nature," because the GAF "scale 'does not have a direct correlation to the severity requirements in [the agency's] mental disorder listing,'" and because the Commissioner has specifically "declined to endorse the scale for use in the disability determination process."  Id. (quoting 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000)).

The ALJ accorded "little weight" to Dr. King's treating source opinions "because they are inconsistent with the record as a whole, including [Dr. King's] treatment notes." (R. 30).  He also found that Dr. King's opinion was "presented in a checkbox format that does not include specific references to what evidence supports his findings."  Id.  He accorded "little weight" to the opinions provided by Mr. Schoenthaler, and Mr. McCullough, Plaintiff's treating counselors, because neither of them is an "acceptable medical source" within the meaning of the regulations; because their opinions are based on Plaintiff's self-reported symptomology, which is not fully credible; and because their opinions are inconsistent with Plaintiff's work history.  (R. 30).

Turning next to the ALJ's evaluation of the opinions of healthcare providers who did not treat Plaintiff, the ALJ noted that Dr. Mintz is a psychologist who examined Plaintiff twice at the request of the state agency, and prepared a report of each examination.  Because the medical evidence and Dr. Mintz's examination supported Dr.

Mintz's opinion, the ALJ accorded "great weight" or "considerable weight" to that opinion. (R. 30-31). Dr. Schulman is a state agency psychological consultant who reviewed the record evidence at the initial review and completed a Psychological Review Technique form and a Mental RFC Assessment form. (R. 473-90). The ALJ accorded "considerable weight" to Dr. Schulman's opinion because he is familiar with the disability determination process and the regulations, his opinion was based on a comprehensive review of the longitudinal medical record, his opinion was supported by Dr. Schulman's detailed summary of the evidence upon which he relied, and he relied specifically on Dr. Mintz's January 2011 opinion. (R. 31). The ALJ also evaluated the opinion of Dr. Fortune, a physician who examined Plaintiff at the request of the agency and prepared a report of that examination. (R. 451-59). The ALJ accorded Dr. Fortune's opinion "great weight" because it was based on a direct physical examination and on a comprehensive review of the medical records, and revealed that Plaintiff engaged in significant symptom magnification, and was consistent with the other record evidence.

### C.   Dr. King

Plaintiff first faults the ALJ's analysis of Dr. King's opinion because the ALJ failed to cite specific inconsistencies upon which he relied. Contrary to Plaintiff's argument, the ALJ specifically noted that Plaintiff's "examinations were grossly normal from late November 2010 until August 2011 and from January 2012 hence." (R. 30) (citing Ex. 25F/7-11, 4-5 (R. 526-27, 529-33)). Moreover, most of Dr. King's records upon which Plaintiff relies to argue no inconsistencies are from dates other than those

14

relied upon by the ALJ.  The record evidence cited by the ALJ, while not absolutely clear tends to support his analysis, and the court may not reweigh the evidence and substitute its opinion for that of the ALJ.  <u>Bowman</u>, 511 F.3d at 1272; <u>accord</u>, <u>Hackett</u>, 395 F.3d at 1172.

Next, Plaintiff argues that it was wrong for the ALJ to discount Dr. King's opinion because he used a checkbox form, while at the same time according "considerable weight" to Dr. Schulman's opinion which was entirely on checkbox forms.  Plaintiff, however, misses the ALJ's explanation regarding each doctor's form.  The ALJ discounted Dr. King's opinion because it was "presented in a checkbox format <u>that does not include specific references to what evidence of record supports his findings</u>, (R. 30) (underline added), whereas he noted that Dr. Schulman's form "is supported by a <u>detailed summary of the evidence that indicates what evidence Dr. Schulman relied upon</u>."  (R. 31) (underline added).  In other words, the ALJ discounted Dr. King's opinion, in part, because he did not explain the evidence which supported his findings, and the ALJ accepted Dr. Schulman's opinion, in part, because he explained which evidence supported his findings.  This is not error.

Plaintiff argues that Dr. King explained that his findings were supported by an EMG showing Plaintiff had left cubital tunnel and a C-Spine MRI showing four bulging discs, and that lab abnormalities were present.  Actually, Dr. King's reference to the EMG and the MRI were in response to a question on the form seeking objective evidence of a condition which could give rise to pain of the degree alleged by Plaintiff.  (R. 428).

15

However, as the ALJ noted, Dr. King's form does not refer to any evidence supporting the exertional, postural, or environmental limitations of which he opined.  Moreover, the form contains a question asking the physician to "[p]lease list the main clinical and laboratory findings which cause the limitations noted above; if not obvious please state why they cause the limitations, and give any other remarks you feel are necessary to describe the patient's functional limitations."  (R. 430).  Dr. King did not explain any limitations, and, contrary to Plaintiff's argument, he responded that there are "no specific lab abnormalities."  Id.  Dr. Schulman's form, on the other hand, presents the evidence relied upon, and suggests the bases for the mental limitations opined.  (R. 485, 489).

Finally, Plaintiff argues that the ALJ failed to consider all of the regulatory factors for weighing medical opinions with regard to Dr. King.  To be sure, the ALJ did not provide a formal factor-by-factor analysis, but that is not required so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'"  Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting Watkins, 350 F.3d at 1300).   Here, the ALJ has made his decision clear, and Plaintiff does not point to evidence demonstrating that the ALJ did not consider certain of the factors.

### D.    The Counselors' Opinions

Plaintiff first challenges the ALJ's finding that the counselors are not "acceptable medical sources" because the opinion forms completed by Mr. McCullough were also signed by Dr. Wiwarnes who is an acceptable medical source, and the ALJ did not

16

address this fact.  Plaintiff is correct that Mr. McCullough's opinion forms also appear to

be signed by another person at least arguably identified as "Wiwarnes, M.D."  (R. 559,

575)[4].  Plaintiff makes no attempt to identify this physician, or to relate him (or her) to

Plaintiff's treatment, to Mr. McCullough, or to "The Guidance Center," the healthcare

organization for whom Mr. McCullough works.  And, the court's review of the record

discloses no treatment record or other evidence which suggests the proper relationship.

Moreover, and perhaps most importantly, the forms completed by Mr. McCullough

(Exhibits 26F and 28F) are identified in the Commissioner's listing of Exhibits as a

"Medical Source Statement - Mental," and a "Mental RFC Assessment," and are

identified as "from Chris McCullough."  (R. Index3).  When asked at the ALJ hearing if

he had any objection to the evidence in Plaintiff's file, counsel responded that he had

"[n]o objection."  (R. 43).  If counsel believed that Exhibits 26F and 28F were opinions of

someone other than, or in addition to, Mr. McCullough, he had the opportunity to correct

the record, and he did not do so.  Plaintiff demonstrates no prejudice from the ALJ's

failure to address the extraneous signature of Dr. Wiwarnes(?) on the opinion forms

completed by Mr. McCullough.

Plaintiff next challenges the ALJ's finding that the counselor's opinions are based

on Plaintiff's "self-reported symptomology, which is not fully credible, as opposed to the

---

[4]The court notes that the signatures in each instance are illegible and unreadable,
and that the handwritten name could be justifiably read as either "Wiwarnes," or "W.
Warnes."  (R. 559, 575).  The court finds it unnecessary in the circumstances to resolve
this ambiguity.

findings of direct examination of the claimant's mental status" (R. 30), by arguing in just one sentence that "these are not self reported by Eastman but are based on the treating office visits, observations by the counselors and doctor, and her diagnoses from her treating physicians."  (Pl. Br. 33).  While it is true that the counselor's opinions undoubtedly have a basis, at least in part, in each of the factors cited in Plaintiff's Brief, it is also true that the mental limitations assessed by these counselors also have a significant basis in Plaintiff's "self-reported symptomology," as found by the ALJ.  In the circumstances presented here, where the ALJ properly found Plaintiff's allegations not credible, and where that finding is based in large part on substantial evidence that Plaintiff exaggerated the severity of her symptoms and has "engaged in a pervasive pattern of behavior intended to make herself appear more limited that she actually is" (R. 28), the ALJ is justified in relying on this factor to discount the opinion of the counselors.

The ALJ also discounted the counselor's opinions because they opined that Plaintiff's allegedly disabling limitations were present since the 1980's (Mr. McCullough) and since 2006 (Mr. Schoenthaler), whereas Plaintiff had worked until June 2010.  (R. 30).  Plaintiff argues that this reason should be rejected because Plaintiff worked as a stylist during portions of the period from 1997 through 2006, and stylists "can usually set their own hours and schedule their own appointments" (thereby implying that these "facts" constitute special circumstances which would allow Plaintiff to work even though she had such severe mental limitations).  (Pl. Br. 33).  This argument is without merit. Plaintiff cites no authority for the proposition either that stylists in general can set their

18

own hours and make their own appointments, or that Plaintiff was working as a stylist in such a situation whereby she could set her own hours or make her own appointments. Moreover, she cites not authority for the proposition that even if she were allowed the flexibility to set her own hours or make her own appointments, she would have been able to work at significant gainful activity levels with the limitations opined by the counselors.

### E.      Dr. Mintz's, Dr. Schulman's, and Dr. Fortune's Opinions

Plaintiff's arguments with regard to these medical opinions are also without merit. In fact, Plaintiff does not argue that the ALJ's reasons for according weight to these opinions are not supported by the record evidence.  Rather, she argues that such opinions are generally worthy of lesser or "the least" weight in the hierarchy of medical opinions, and that the reasons given by the ALJ are not sufficient to accord great weight.  As the court found above, Plaintiff has shown no error in the ALJ's reasons for discounting the opinions of the treating healthcare providers.  Moreover, the ALJ stated the weight accorded to the medical opinion of each of these three providers, and the reasons for that weight.  The record evidence supports those reasons.  Plaintiff has shown no error in the ALJ's evaluation of the medical source opinions.

## IV.    "Narrative Bridge"

Plaintiff claims that although the ALJ discussed the medical opinions, he failed to provide a "narrative bridge" linking the limitations from each opinion to the limitations assessed in the RFC.  Plaintiff cites to the medical opinion of Dr. Fortune that Plaintiff is able to lift 40 pounds occasionally, 19 pounds frequently, and 10 pounds continuously,

and argues that although the ALJ gave great weight to Dr. Fortune's opinion, he did not

explain where he got the limitation he assessed for Plaintiff--lifting up to 10 pounds

occasionally.  (Pl. Br. 37).  She also cites to Dr. Mintz's opinion that Plaintiff is able to

understand simple and intermediate instructions and argues that although the ALJ gave

considerable weight to Dr. Mintz's opinions, he failed to include anything in the RFC

assessment on Plaintiff's ability to understand instructions.  (Pl. Br. 37).  Plaintiff's

arguments misunderstand the law in the Tenth Circuit regarding RFC assessment.

 First, there is no "narrative bridge" requirement that an ALJ explain from where in

the evidence each RFC limitation was assessed.  Rather, SSR 96-8p imposes a <u>narrative</u>

<u>discussion</u> requirement on the ALJ when assessing RFC.  West's Soc. Sec. Reporting

Serv., Rulings 149 (Supp. 2014).  The narrative discussion is to cite specific medical facts

and nonmedical evidence to describe how the evidence supports each conclusion, discuss

how the plaintiff is able to perform sustained work activities, and describe the maximum

amount of each work activity the plaintiff can perform.  <u>Id.</u>  The discussion must include

an explanation how any ambiguities and material inconsistencies in the evidence were

considered and resolved.  <u>Id.</u>  And, the narrative discussion must include consideration of

the credibility of plaintiff's allegations of symptoms and consideration of medical

opinions regarding plaintiff's capabilities.  <u>Id.</u> at 149-50.  The narrative discussion of the

ALJ's RFC assessment in this case occupied more than eight pages.  (R. 23-32).  As has

already been demonstrated in this decision, the ALJ therein cited specific medical facts

and nonmedical evidence, discussed the credibility of Plaintiff's allegations of symptoms, and discussed the medical source opinions.

Second, "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012) (citing Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004)); Wall, 561 F.3d at 1068-69). The narrative discussion required by SSR 96-8p to be provided in an RFC assessment does not require citation to a medical opinion, or even to medical evidence in the administrative record for each RFC limitation assessed. Castillo v. Astrue, No. 10-1052, 2011 WL 13627, *11 (D. Kan. Jan. 4, 2011). "What is required is that the discussion describe how the evidence supports the RFC conclusions, and cite specific medical facts and nonmedical evidence supporting the RFC assessment." Id. See also, Thongleuth v. Astrue, No. 10-1101-JWL, 2011 WL 1303374, *13 (D. Kan. Apr. 4, 2011). There is no need in this case, or in any other, for the Commissioner to base the limitations in his RFC assessment upon specific statements in medical evidence or opinions in the record. Although the ALJ accorded "considerable weight" to Dr. Mintz's opinion and "great weight" to Dr. Fortune's opinion, he did not accord controlling weight, and he was not required to include the limitations opined by those doctors in his RFC. Moreover, at the end of his narrative discussion, the ALJ summarized his analysis:

> In summation, the above residual functional capacity assessment is supported by the record as a whole, including the objective medical evidence and the opinions weighed above. The claimant has longstanding diagnoses of various mental impairments and Fibromyalgia. Her mental impairments, which have resulted in only rare disruptions in mood and

21

affect, are treated with psychotropic medications and supportive therapy. Her Fibromyalgia has not consistently resulted in any significant medical signs indicative of profound musculoskeletal, soft tissue, or neuropathic discomfort. Indeed, examinations of the claimant have indicated that she has engaged in significant symptom magnification. The claimant's Fibromyalgia has also been treated conservatively, with no more significant treatment than medication management being recommended. The foregoing impairments are exacerbated by the claimant's obesity; however, her allegations regarding the intensity, persistence, and limiting effects of her impairments are belied by the claimant's symptom magnification, the inconsistencies in the statements she has made to her physicians and the agency, her ability to work despite her impairments coupled with a lack of evidence demonstrating a worsening in her conditions around the time she stopped working, and her daily activities. Based upon the totality of the foregoing, the undersigned finds that, since her alleged onset date of disability, the claimant has retained the ability to perform a range of work at the sedentary exertional level. The claimant can only occasionally balance, stoop, kneel, crouch, crawl, or climb ramps or stairs; can never climb ladders, ropes, or scaffolds; should avoid concentrated exposure to temperature extremes, vibration, and work hazards; can only occasionally reach overhead with her dominant, left upper extremity; can tolerate no contact with the general public; and can tolerate only occasionally contact with co-workers and supervisors. She requires the ability to alternate between sitting and standing positions once every 30 to 60 minutes for up to five minutes at a time; however, she can remain at her workstation when doing so. The claimant also requires the use of a cane if ambulation in excess of 50 feet is required.

(R. 31-32). Plaintiff has shown no error in the narrative discussion or an inadequate link between the evidence and the RFC assessment.

## V.      RFC Assessment Not Supported by Substantial Evidence

Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence because it is not based upon a proper consideration of the third-party opinion of Plaintiff's mother, because the ALJ erred in evaluating the credibility of Plaintiff's allegations of symptoms, because the ALJ did not include limitations based on Plaintiff's

impairments which are not severe, or based on the side effects of medication, and because the ALJ failed to account for all of the limitations he assessed.  The court has already determined that Plaintiff has shown no error in the ALJ's credibility determination.  It will now consider each of the remaining arguments in this regard.

### A.      Evaluation of the Third-Party Opinion

Plaintiff argues that an ALJ is obliged to consider the opinions of third parties, that the ALJ failed to discuss the opinion of her mother or accord it any weight, and that this is error requiring remand.  (Pl. Br. 38-39).  The Commissioner admits that the ALJ did not expressly address the opinion of Plaintiff's mother, but argues that this error does not require remand because the same evidence relied upon by the ALJ in discounting the credibility of Plaintiff's allegations also discredits the opinion of Plaintiff's mother. (Comm'r Br. 14) (citing Buckner v. Astrue, 646 F.3d 549, 559-60 (8th Cir. 2011)).  In her Reply, Plaintiff distinguishes Buckner, arguing that in Buckner the third party's opinions were merely cumulative of the plaintiff's allegations whereas in this case, Plaintiff's "mother reported different limitations than [Plaintiff] reported."  (Reply 6).

As the parties seem to agree, in the Tenth Circuit, although an ALJ is not required to make specific, written findings regarding each witnesses testimony, he is required to consider each lay witness's opinion and the written decision must reflect that the ALJ considered that opinion.  Blea, 466 F.3d at 914-15; Adams v. Chater, 93 F.3d 712, 715 (10th Cir. 1996).  In Adams, the court "decline[d] claimant's invitation to adopt a rule requiring an ALJ to make specific written findings of each witness's credibility,

23

particularly where the written decision reflects that the ALJ considered the testimony."
93 F.3d at 715.  The <u>Adams</u> court found "that the ALJ considered the testimony of
claimant's wife in making his decision because he specifically referred to it in his written
opinion," and the court found no error in the ALJ's failure to make specific, written
findings regarding that testimony.  <u>Id.</u>  Thirteen years later, the Tenth Circuit confirmed
the rule that an ALJ is not required to make specific written findings regarding third-party
testimony, so long as the written decision reflects that the ALJ considered that testimony.
<u>Blea</u>, 466 F.3d at 915.

Here, both parties agree that the ALJ erred because the written decision does not
reflect that he considered the opinion of Plaintiff's mother.  However, as the
Commissioner argues, the <u>Buckner</u> court held that such error may be harmless where the
same evidence used to discredit the plaintiff's statement also discredited the third party's
opinions.  <u>Buckner</u>, 646 F.3d at 660.  Moreover, the Tenth Circuit has also relied upon the
holding in <u>Buckner</u> to find an ALJ's failure to consider a third party's opinion was
harmless error.  <u>Best-Willie v. Colvin</u>, 514 Fed. App'x 728, 736 (10th Cir. 2013).

Plaintiff's argument (that the <u>Buckner</u> case should be distinguished because
Plaintiff's "mother reported different limitations than [Plaintiff] reported" (Reply 6)) is
without merit.  Although Ms. Eastman's testimony is not identical in every respect to
Plaintiff's allegations, as in <u>Buckner</u>, the same evidence used to discredit Plaintiff's
allegations also discredits Ms. Eastman's opinions.  Moreover, the same can be said of
the court's analysis in <u>Buckner</u>, for the <u>Buckner</u> court acknowledged that the ALJ did not

24

address all of the specific claims made by the third party in that case.  646 F.3d at 560.

The ALJ's error in failing to discuss Ms. Eastman's opinion is harmless.

### B.    Limitations Based on Non-severe Impairments or on Side Effects

Plaintiff cites SSR 96-8p for the proposition that even though a non-severe

impairment may not significantly limit a claimant's ability to perform basic work

activities, when considered in combination with all of the other impairments it may be

critical to the outcome of a claim.  (Pl. Br. 41).  Without further elaboration, she then

asserts that the ALJ's failure to include limitations based on the impairments the ALJ

found to be non-severe (left cubital tunnel syndrome and right ankle pain) is error.

Once again, Plaintiff's argument is without merit.  For the ALJ discussed in great

detail why he found that the record demonstrates no functional limitations resulting from

left cubital tunnel syndrome or from right ankle pain in Plaintiff's abilities to perform

basic work activities.  (R. 21).  Plaintiff does not even attempt to show error in this

analysis.  Moreover, Plaintiff does not explain how she arrived at the conclusion that the

limitations to sedentary work; to only occasional climbing of ramps and stairs, and no

climbing or ladders, ropes, and scaffolds; to only occasional overhead reaching with her

left upper extremity; and the requirement to use a cane whenever she walks in excess of

50 feet, are not limitations which are based, at least in part, on the non-severe

impairments of left cubital tunnel syndrome and right ankle pain.

Plaintiff's claim that "the ALJ did not address [Plaintiff's] inability to drive or use

dangerous equipment due to side effects from her medications" (Pl. Br. 41), is likewise,

without merit.  The simple reply is that the ALJ did not find an inability to drive or use

dangerous equipment due to side effects, and Plaintiff does not point to record evidence

establishing such a limitation.  Moreover, the ALJ specifically discussed Plaintiff's

allegation of serious side effects from medication:

> The undersigned has considered, but is not persuaded by, the claimant's allegations of experiencing serious side effects due to her treatment regimen.  She reported experiencing the unwanted side effects of stomach irritation, fatigue, constipation, dizziness, and dry mouth.  (Exhibit 14E/1; Claimant's Testimony).  Although the record documents the claimant complaining of some constipation in September 2010, it does not corroborate her allegations of experiencing constant side effects that would further limit her ability to engage in work-related activities beyond the limitations identified at Finding Five.  (Exhibit 6F/10).

(R. 27).  Plaintiff neither acknowledged nor addressed this finding.

### C.     Failure to Account for All Limitations Assessed

In her final argument, Plaintiff asserts that the ALJ found that Plaintiff has

moderate restrictions in activities of daily living; moderate difficulties in social

functioning; and mild difficulties in maintaining concentration, persistence, or pace

(citing R. 22), and claims that the ALJ erred because he failed to include these findings in

the RFC assessed or in the hypothetical scenario presented to the vocational expert.

Plaintiff's argument cites to the ALJ's step three analysis where the ALJ applied the

Commissioner's Psychiatric Review Technique and found restrictions as identified by

Plaintiff in the first three of the four broad mental functional areas (the "paragraph B"

criteria of the Mental Listings) he considered when applying that technique.  (R. 21-23);

see also 20 C.F.R. §§ 404.1520a, 416.920a (explaining the psychiatric review technique);

and 20 C.F.R., Pt. 404, Subpt. P, App. 1 § 12.00A (explaining the Mental Listings and the "paragraph B" criteria).  But, the ALJ was careful to explain at the end of his step three discussion that the "limitations in the "paragraph B" criteria are not a residual functional capacity assessment," and that he provided an RFC assessment in which he reflected the degree of limitation he found in assessing the "paragraph B" criteria.  (R. 23).  In his RFC assessment, the ALJ found mental limitations restricting Plaintiff to jobs which required "no contact with the general public," and "only occasional contact with co-workers and supervisors."  (R. 24).  These are the mental limitations assessed by the ALJ, and he included them both in the hypothetical scenario presented to the vocational expert and in the RFC assessed in his decision.  This is not error.  Plaintiff does not argue that these mental limitations are not supported by the record evidence, and does not suggest other specific mental restrictions which are required by the record evidence.

The court has considered each allegation of error asserted by Plaintiff and has found no error in the final decision of the Commissioner.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 25th day of November 2014, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**